Good morning, Your Honor. My name is Jonathan Kaufman, and I represent the petitioner. Good morning. This is a petition for review of an order of the Board of Immigration Appeals. What I'd like to discuss first, or I'd like to reserve two minutes, if I can, for rebuttal. What I'd like to discuss first is the frivolous finding that was made by the board. I think that's a good place to start. The board found that the petitioner received warnings of the consequences of filing an asylum application. And the frivolous finding is permitted only if an alien files an application after receiving the notice of the consequences, and that's in the act itself. The regulations require that an alien be given notice before the finding can be made and an opportunity to respond to any discrepancies that are perceived in his evidence. Let me ask you here, in this case, I think it's on the asylum application, there's a spot in bold or whatever that discusses frivolous, and your client signed that. And my understanding is your client also used an interpreter at the time that he was doing the asylum application. Is that correct? That's correct. Would it be your position that that could never be adequate if, for example, if the I.J. had given him an opportunity to say, if the I.J. had said, look, you signed this here, let's talk about that. And he admitted that he signed it and someone translated it to him. Could that be enough in those circumstances? Well, in that type of circumstance, which is what happened here, then the alien would have been specifically advised by the immigration judge that there was a frivolous warning in the application. In fact, what happened in this hearing was that at the conclusion of the hearing, when all the evidence was in, the trial attorney representing the government at the hearing asked the judge to make the frivolous determination. In fact, the Petitioner was never told that that was even going on, that that wasn't translated for him. And when the judge asked the lawyer representing the Petitioner at the hearing, he didn't even know that the application contained that admonition. He had to be shown it by the immigration judge. So the Petitioner, there really was no evidence that he was really aware of that, other than the very inception of the hearing when the immigration judge asked him if the application was read to him. But it's very unreasonable to say that this foreign preparer in particular would have read word for word every single sentence in that application to the Petitioner. And the regulations require more than just the written admonition. They require that the immigration judge give oral notice. And that can't be done. And where is that in the regulations? Well, I'm sorry, Your Honor. It's not the regulations. It's the immigration court's operating procedures. They require that an immigration judge give oral notice. And when an alien appears at a removal hearing, there's a form that's given to the alien showing that those admonitions were made. They're made on the record. What the operating procedures. Counsel. Counsel. Are those procedures on which you are relying in the record? They're referred to. Are the procedures themselves that you're relying on, are they somewhere in the record that you could cite to where we could review them? I cite to the Internet website in the opening brief where the procedures are available. Okay. Thanks. The regulations don't specifically say that oral notice has to be given, but the regulations do say that before the finding can take effect, that the alien has to be given some notice and an opportunity to respond. So technically, in some instances, I know that you're not conceding this here. Technically, in some instances, depending on what all the circumstances are, the fact that it was in the application, that it's in bold and the person signed it, that could be sufficient in some circumstances. If there's some other accompanying oral notice, if there was evidence that at the asylum office, where this case began at an asylum office, that the asylum officer had given some notice about the consequences of filing a frivolous application. But there's no evidence here that that occurred. So. It's your thought that the written explanation on the application is not by itself sufficient to explain the dangers of filing a frivolous application. Not in this case. Not in any case or just not in this case? Perhaps in a case where there was an attorney who was providing some sort of effective assistance, maybe in a case like that, the alien could be charged with that notice. But here you have a situation where at the beginning of the hearing, the lawyer representing Petitioner said that he never, he didn't remember if he had ever reviewed the application with the Petitioner. And at the end of the hearing, you had the same lawyer saying he didn't even know that the admonition appeared in the application. So by all indications, there's really a very, there's a gap, an evidentiary gap of any real notice being understood, communicated to and understood by this Petitioner. Is that an argument for ineffective assistance of counsel? I think he clearly received ineffective assistance of counsel. Was that raised before the BIA? Yes, it was. On that point? Yes, it was. Okay. The second issue as far as the frivolous application is the BIA finding that the application was frivolous based on the evidence that was received from an ICE agent who testified at the hearing. And according to the BIA, it found that the ICE agent testified that all of the applications that this foreign preparer prepared were fraudulent, that the foreign preparer made that admission. Why doesn't the fact alone that the famous Jeep stuck in the mud, which was in Mr. Chandy's application, and then there was testimony that it was in, what, 24 applications? That's what that agent testified. And why wouldn't that alone be enough? Because there was no cross-examination of that agent. And there was really no inquiry into whether or not that agent's testimony and that agent's factual assertions were correct, how he found out the 24 applications, what was the technology used, what effort did he make to make that finding. That agent wasn't cross-examined at all at the hearing. What happened at the hearing when the agent said that Mohinder Singh was involved in this criminal enterprise, the attorney representing the Petitioner at the hearing correctly or incorrectly knew immediately he wanted to distance himself from this alien and this asylum application. He didn't conduct any cross-examination of that witness at all. What he talked about was a criminal fraud investigation 14 years earlier when he was the subject of a fraud investigation, and he sat on something that he called a hard chair. And what's very, very clear from this record is that what that lawyer's main objective at that moment was was not to sit on a hard chair again. So there was nothing done, no cross-examination. I don't think that witness's testimony is really worth much here because of the cross-examination. And because there was no cross-examination, the Board made a factual finding that's not even consistent with the evidence. The agent did not testify that all of the applications prepared by this form preparer were fraudulent. He said that he seized approximately 452 files and that 152 of those files were used to prosecute this person and that this Petitioner's application was not included in that 152 cases. He testified that this Petitioner was not his application was reviewed by the agent at all. He didn't do any identical testimony. You don't have too much time for rebuttal. Now, I know that you have another issue, but you're going to be talking that issue permeates a number of cases this morning. So I assume you'll probably talk about that on the other one. Yeah. And we'll, I mean, we can carry a thought from one case to the next. So, all right. Thank you. Thank you. Good morning. May it please the Court, Michelle Latour for the government. The adverse credibility determination here is supported by the record. Mr. Tondi testified inconsistently with respect to numerous elements of his claim that were material to his application for asylum. I'm actually more interested in the frivolous now because that obviously is sustaining that, you know, affirming that means he can never get any relief, right? Yes. Yes, Your Honor. The, here, you know, you've got the application. It's in bold. He signed the application. I believe that there's record, there's evidence in the record that he used an interpreter. And then it does appear as appellant's counsel has raised that this just sort of and Mr. Chandy was never, you know, confronted with this. Did you sign this? What was said to you at that time? Any exploration of the, you know, the interpreter situation? Did you understand what you were signing or, you know, anything like that? What would be your response to that? Well, first I would note that the immigration judge proceeded with extreme caution with respect to that. When it came to making the frivolousness finding, he asked both counsel explicitly, was he advised at the time that he filed the asylum application that this could happen? And both counsel, everybody agreed at that time. Government counsel pointed out the admonition that was stated in the asylum application. And Mr. Chandy's counsel admitted that it was there. And at the very beginning of the immigration trial. Well, it is there. That's not disputed. But there isn't really any discussion of it during the proceedings. Say, for example, on an adverse credibility when you say, well, I don't, you know, tell me, you know, what's your response to this inconsistency or something along those lines? Mr. Chandy never was given an opportunity to say I didn't understand that or not my signature or, you know, what. Okay. Well, he was given a chance to, I just want to make clear that he was given a chance to explain the frivolousness findings and to rebut the testimony of the government witness in the case. At the beginning of the hearing, the immigration judge asked Mr. Chandy, did you, were the contents of your asylum application explained to you? And the answer was yes. And it said, were the entire contents explained? It said yes. They asked him, were they explained in a language that you understand? The answer was yes. It was explained in Pujabi. And I think that under these, under all of these circumstances where he was given a chance to explain or rebut the evidence against him on the question and where he was given a chance to say that he looked at the contents of his asylum application and he was unwilling to back away from any of those contents and stood by them throughout the entire hearing while counsel was there, that's enough to sustain the frivolousness finding in this case. Okay. Do you think that obviously if, you know, I think an argument can be made here that perhaps the, well, for example, the Jeep and the, you know, the stuck in the dirt, what, 24 asylum applications, and then the agent also testified as to this Mr. Bossy, or I don't know if I'm pronouncing that correctly, the fraudulent nature of his handling of asylum applications, and he happened to be the one that was doing this. Do you think that the argument that this is possibly a more aggravated adverse finding or that, you know, the discrepancies are pretty extreme, that that feeds into the frivolousness in his understanding of all of that? Is that something we can consider? I think so, Your Honor. Yes. I think given the nature of it all and the fact that it was all presented to him and that he had an opportunity to rebut it, yes, I think that should feed into whether or not he understood. And that he was given an opportunity to step away from it or to explain it in any way that he possibly could, and he was unable to do so effectively. So he should be held to the finding. Not only that, there was also some problems with some of the documentary evidence in this particular case. He testified that he had joined the Acala y Dalman in 1997, but the letter that he presented in support of that was contrary to his testimony. And also there was some question as to the validity of the letter because it was not signed. So that was another showing of a material or deliberate fabrication in his case. So there was enough evidence here for the immigration judge to reasonably find that there was frivolousness and there was enough of an opportunity for the Respondent to respond and to rebut the contentions here. On this record, Your Honor, it's the government's position that the adverse credibility also informs the frivolousness finding here. There's not just the evidence of the frivolousness but also the adverse credibility, which is in large part undisputed here. And I guess we'll talk about the notice to appear issue in the next case. Well, you're on the next case, so that's fine. Then you can do that on the next case if you want. Okay. So if the Court has no more questions, then I will. Judge Gould, did you have any additional questions? No. Thank you very much. I don't. I think I've got this one in hand. Judge Nelson? No. All right. Thank you. As far as for the rebuttal, Your Honor, I don't think that the explanation from the forum preparers is sufficient to satisfy the requirements of the admonitions that have to be given to an alien who is applying for asylum. The admonitions have to come from some government official, whether it's the asylum officer or the immigration judge. So why do you base that assertion? What regulation or procedure or precedent supports that? Well, it's the Act itself at 1158d6. It says that it's the attorney general who has to make the finding. The attorney general has to give the notice. The regulations require that the immigration judge gives the notice. And, again, the operating procedures for the immigration court specifically are directed to the immigration judge. So the notice that's given by a forum preparer, where it's not on the record and there's really no objective evidence of what went on when the forum preparer is sitting down with an alien and preparing the forum, you don't know really anything about the background of that preparer. Well, what about the fact that it's sort of incorporated by reference in the hearing itself, that the IJ starts with, okay, did you fill this out? Is everything correct in this? Was it translated? Did you understand everything? Do you stand by everything in here? That doesn't that incorporate by reference? Well, I think that there are two discrete determinations that are being made in an asylum case. One is just the general credibility determination. And the other is this frivolous finding. For credibility, the alien does not have to be given any advance notice and explanation about the law and warnings. But frivolous, because of the heightened consequences, you have this other duty that's imposed on the adjudicator, the government adjudicator, to make sure that the alien understands what he's doing. And so I don't think that the immigration judge saying at the beginning of the hearing, did you read this application? Is this application correct? Necessarily alerts the alien to the consequences of filing a frivolous application. Does the form on its face, does the form that he filled out on the face of the form give a warning about the consequences? Not fully. What the form says is that a filing of a frivolous application could have consequences, but it does not specify what those consequences are. So the form itself doesn't say that if you file a frivolous asylum application, your hope of ever living legally in the United States is finished. Well, is there any case out there that says you have to tell the consequences? The exact that you'll never, is there anything that says that you have to say that specifically? Sort of like you have to say it's 25 to life. You know, there's a lot of cases in criminal law where a person might have to be advised that there would be consequences, but you don't have to tell someone, okay, your next sentence is going to be 25 to life, or you won't be eligible for this or that. Well, I'm not a criminal lawyer. Well, is there anything here? No. No, there's no case law on this. And I think there's the Farrer case, which says that there is judicial review of the frivolous finding. But as far as the minutia of detail that this case, you know, brings up, I couldn't find anything that deals with these issues. Well, I think that there's a common sense factor in the sense that if you lie, that I think I could ask a 5-year-old, is lying good? You know, I mean, that, you know, I don't think that you, if you, I mean, in the worst case scenario for your, if you assume that if certain things in this application, if you assume that he, that the whole Jeep thing is that there are all these fraudulent applications and that in fact is the case and he was never stuck in the Jeep in the mud as in the other 24 and that there were some documents and all of that, a person would know that they were lies if you make that, if you go to that place. Well, maybe that person would be charged with the knowledge that their asylum application could be denied, that they could be deported, that they could be inadmissible and need a waiver to reenter the United States again, but that doesn't necessarily mean that the person also knows that they can never reenter the United States again and they're ineligible for any immigration benefit in the future. And another thing, Your Honor, is that there was no finding in this case that any of the documents were fraudulent in this man's case. There was no investigation made into the authenticity of a single document. The agent said he didn't review this case. He reviewed other cases. All right. Thank you. This matter will now stand submitted. The next case on calendar is Odilia Aldana Hernandez v. Alberto Gonzalez, 0476302.
judges: T.G. Nelson, Gould, Callahan